**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIE EDWARD SNEED,** | : | |
| **Petitioner,** | : | |
| | : | **CIVIL ACTION NO. 06-5328** |
| **v.** | : | |
| | : | |
| **DEPUTY SECRETARY JEFFREY** | : | |
| **BEARD,** *et al.*, | : | |
| **Respondents.** | : | |

## MEMORANDUM OPINION

Rufe, J.                                                                                September 6, 2018

Before the Court is Petitioner Willie Edward Sneed's amended petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. After a careful review of the filings in this matter,

and for the reasons that follow, the Court will deny the amended petition.

### I.    BACKGROUND

On October 14, 1980, Petitioner shot Calvin Hawkins to death because Hawkins

supposedly sold Petitioner aspirin instead of cocaine. The Pennsylvania Supreme Court laid out

the facts of this case as follows in its direct appeal decision:

> On October 13, 1980, appellant went to a "shooting gallery" in Philadelphia to obtain and
> "shoot" drugs. Before the night passed, there was to be a shooting of more than drugs.
> At the "gallery" there were no drugs at hand. "Boobie" Liverman, a friend of the
> appellant, told him where drugs were available. "Signman" Henderson overheard and
> offered to take appellant to the pusher. Appellant and Henderson went to the pusher's
> house, but he was not at home. Sitting on the front steps of the pusher's house was a
> stranger, who when told they were in the market for cocaine, offered some. The drugs
> were, however, a distance away, and the stranger offered a ride in a parked, white
> Lincoln Continental; the type of a luxury car whose shining chrome so often reflects the
> grim graffitied streets and haunted faces of its victims.
>
> In the car were two other strangers to appellant and his friend Henderson. They all got in
> and drove to another section of the city. They stopped at a bar and appellant's friend
> Henderson got out of the car and waited while appellant and the other strangers went for
> the drugs. They never returned for Henderson, and he took a cab home. After a while
> appellant came to Henderson's house and told Henderson, who would later tell the jury,
> that he had been swindled by the three strangers who sold him aspirin for cocaine and

would not return his money. The three strangers who would not return his money drove appellant back to the "gallery". When they did appellant snatched the keys from the Lincoln, ran into the gallery, and got his gun. Rather than return his money the three men, abandoning the car, ran. Appellant chased one Calvin Hawkins, and shot him three (3) times. Hawkins took cover behind a parked car. Then, as appellant told Henderson, and Henderson told the jury,

> I [Appellant] jumped on top of the car and the guy looked up at me [Appellant] and said, "Damn, you shot me twice; ain't that enough?"

> I [Appellant] shot him . . . in the head point blank and his head hit the ground.

After furnishing his account of the shooting, the appellant spent the rest of the night at Henderson's home. Henderson buried Sneed's weapon in his backyard for safekeeping. The appellant left in the morning after Henderson returned his revolver.[1]

On March 14, 1985, Petitioner was convicted of first degree murder and related charges by a jury in the Pennsylvania Court of Common Pleas, Philadelphia County for the death of Calvin Hawkins. After a sentencing hearing the following day, he was sentenced to death. The Pennsylvania Supreme Court affirmed his conviction and sentence.[2]

On January 16, 1997, Petitioner filed a *pro se* PCRA petition. On July 20, 1999, then-Governor Thomas Ridge issued a warrant scheduling Petitioner's execution. Two days later, Petitioner filed a counseled, emergency motion for stay of execution. The Court of Common Pleas granted the stay of execution and ordered the filing of a counseled PCRA petition. Accordingly, Petitioner filed a counseled PCRA petition raising twenty-five claims for relief from his conviction and sentence of death.

The PCRA court granted an evidentiary hearing on two issues: (1) whether the prosecutor used his peremptory challenges in a racially discriminatory manner in violation of *Batson v.*

---

[1] *Commonwealth v. Sneed*, 526 A.2d 749, 751-52 (Pa. 1987) (internal citations and footnotes omitted) (referred to as "*Sneed-1*").

[2] *See Sneed-1*, 526 A.2d 749.

*Kentucky*[3]; and (2) whether trial counsel was ineffective for failing to develop and present mitigating evidence at the penalty hearing. Evidentiary hearings were held in September and November of 2001.

On January 4, 2002, the PCRA court granted Petitioner a new trial on the *Batson* claim and a new penalty hearing on the basis of trial counsel's ineffectiveness during the penalty phase. The Commonwealth appealed. On June 19, 2006, the Pennsylvania Supreme Court overturned the PCRA court's grant of a new trial and upheld the grant of a new penalty hearing.[4] The Pennsylvania Supreme Court then relinquished jurisdiction to the PCRA court.

The PCRA court scheduled a hearing for December 27, 2006, to determine the status of the remaining claims. Prior to the hearing, on December 4, 2006, Petitioner filed a protective habeas petition before this Court. The PCRA court orally denied the remaining guilt phase claims without holding an evidentiary hearing and issued an opinion on March 14, 2007. Petitioner appealed, but the Pennsylvania Supreme Court quashed the appeal on December 13, 2007, because the order was not entered on the docket. Consequently, the PCRA court entered an order dismissing the remaining claims on October 21, 2009, and the Pennsylvania Supreme Court affirmed and remanded for a new penalty phase hearing on June 4, 2012.[5]

On December 8, 2012, Petitioner was re-sentenced to life in prison without the possibility of parole. Following Petitioner's re-sentencing, this Court removed this case from civil suspense and ordered Petitioner to file an amended petition for writ of habeas corpus. Petitioner thus filed the instant, amended petition.

---

[3] 476 U.S. 79 (1986).

[4] *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (referred to as "*Sneed-2*").

[5] *Commonwealth v. Sneed*, 45 A.3d 1096, 1117 (Pa. 2012) (referred to as "*Sneed-3*").

## II.   LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996[6] ("AEDPA") governs habeas petitions, like the one before this Court.  Under the AEDPA, "a district court shall entertain an application for writ of habeas corpus [filed on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[7]

When the claims presented in a federal habeas petition have been decided on the merits in state court, a district court may not grant relief unless the adjudication of the claim in state court resulted in a decision: (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[8]

A state court's decision is "contrary to . . . clearly established" federal law where the state court applies a rule of law that differs from the governing rule set forth in Supreme Court precedent, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."[9]  A decision is an "unreasonable application" of clearly established law where the state court "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."[10]  The "unreasonable application" clause requires

---

[6] 28 U.S.C. § 2254.

[7] 28 U.S.C. § 2254(a).

[8] 28 U.S.C. § 2254(d).

[9] *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

[10] *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).

more than an incorrect or erroneous state court decision.[11]  Instead, the application of clearly established law must be "objectively unreasonable."[12]

A petitioner faces a high hurdle in challenging the factual basis for a prior state-court decision rejecting a claim.  The prisoner bears the burden of rebutting the state court's factual findings by clear and convincing evidence.[13]  Furthermore, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."[14]

## III.    DISCUSSION

Petitioner raises six grounds for relief.  First, he argues that he is entitled to a new trial because the prosecutor used peremptory challenges during jury selection in a racially discriminatory manner, and defense counsel was ineffective for failing to object.  Second, Petitioner urges the Court to vacate his conviction because he did not receive effective assistance of counsel at the guilt stage, in violation of his Sixth and Fourteenth Amendment rights.  Third, Petitioner argues that the prosecutor engaged in misconduct during closing arguments in violation of his due process rights under the Fourteenth Amendment.  Fourth, Petitioner seeks to vacate his conviction because of improper interference with the jury.  Fifth, Petitioner asserts that the Commonwealth withheld material and exculpatory evidence in violation of his due process rights under the Fourteenth Amendment.  Sixth, Petitioner urges the Court to vacate his conviction and sentence in light of the prejudicial effects of the cumulative error in this case.

---

[11] *Id.*

[12] *Id.*

[13] *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (internal quotations and citations omitted).

[14] *Id.* (internal quotation marks and citation omitted).

### A. Petitioner's Claims That the Prosecutor Used His Peremptory Challenges in a Racially Discriminatory Manner in Violation of *Batson*, and that Counsel Was Ineffective for Failing to Object or Raise the Issue on Appeal, Do Not Provide a Basis for Relief

Petitioner first argues that he is entitled to a new trial because the prosecutor used peremptory challenges during jury selection in a racially discriminatory manner in violation of *Batson v. Kentucky*,[15] and defense counsel was ineffective for failing to contemporaneously object or raise the issue on direct appeal. Petitioner, who is African-American, was tried and convicted in 1985. To demonstrate racial discrimination in the use of peremptory challenges at the time of Petitioner's trial, he was required to show a pattern and practice of racial discrimination in jury selection across multiple prosecutions, under the then-prevailing standard in *Swain v. Alabama*.[16] While his conviction was on direct appeal, the Supreme Court decided *Batson*. "*Batson* altered the evidentiary burden required to prove purposeful discrimination by eliminating *Swain*'s requirement that a defendant show a prior pattern of discrimination; instead, it permitted a defendant to establish an equal protection violation based on discrimination in his trial alone."[17] Since *Batson* applies "retroactively to all cases, state or federal, pending on direct review or not yet final" at the time it was decided, it applies to Petitioner's case.[18]

---

[15] *Batson v. Kentucky*, 476 U.S. 79 (1986). *Batson* claims are analyzed under a three-part burden shifting framework:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, . . . the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328-29 (2003) (citations omitted). A prima facie case will be found if, considering all the facts and relevant circumstances, the evidence is "sufficient to permit the trial judge to draw an inference that discrimination has occurred" in the prosecutor's exercise of peremptory challenges. *Johnson v. California*, 545 U.S. 162, 170 (2005).

[16] 380 U.S. 202, 227-28 (1965), *overruled by Batson*, 476 U.S. at 97-99.

[17] *Abu-Jamal v. Horn*, 520 F.3d 272, 279 (3d Cir. 2008), *vacated on other grounds by Beard v. Abu-Jamal*, 558 U.S. 1143 (2010).

[18] *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).

Before a district court can entertain the merits of a habeas petitioner's *Batson* claim, it must first determine whether the petitioner made a timely objection to the prosecutor's use of peremptory challenges to preserve the *Batson* issue on appeal. The United States Court of Appeals for the Third Circuit has explicitly stated that "a timely objection is required to preserve a claimed *Batson* violation for appeal and failing to do so will result in forfeiture of the claim."[19] A timely objection gives the trial judge an opportunity to "promptly consider the alleged misconduct during jury selection," "develop a complete record," and "remedy any defects."[20]

In this case, Petitioner did not object to the prosecutor's use of peremptory challenges at any point during *voir dire*, at his 1985 trial, or on direct appeal. Petitioner first raised the *Batson* issue in his amended PCRA petition, filed on December 31, 1999, nearly fifteen years after his conviction. Thus, the Pennsylvania Supreme Court correctly noted that, "in order for [Petitioner] to have been entitled to retroactive application of *Batson* on his direct appeal, he had to have challenged the Commonwealth's use of peremptory challenges at trial and on direct appeal" under the then-prevailing standard in *Swain v. Alabama*.[21] Petitioner, "however, did not do so."[22] His failure to make a timely objection results in forfeiture of his *Batson* claim.[23]

Petitioner also raises a derivative claim that his counsel was ineffective for failing to raise a *Batson* claim either at trial or on direct appeal. The Sixth Amendment guarantees the effective

---

[19] *Lewis v. Horn*, 581 F.3d 92, 102 (3d Cir. 2009) (internal quotation marks and citations omitted).

[20] *Abu-Jamal v. Horn*, 520 F.3d 272, 281-82 (3d Cir. 2008), *vacated on other grounds by Beard v. Abu-Jamal*, 558 U.S. 1143 (2010).

[21] *Sneed-2*, 899 A.2d at 1075; *see also Abu-Jamal,* 520 F.3d at 284 (3d Cir. 2008) (explaining that the petitioner did not preserve his *Batson* claim by failing to object to the prosecutor's challenges at trial, despite the fact that *Batson* had not yet been decided, and concluding that the petitioner was required to have made an attempt "to frame the issue under the then-prevailing rules of *Swain v. Alabama*") (internal quotation marks and citation omitted).

[22] *Sneed-2*, 899 A.2d at 1075.

[23] *See Clausell v. Sherrer*, 594 F.3d 191, 194-95 (3d Cir. 2010) ("As an initial matter, we can dispose of [Petitioner's] substantive *Batson* claim, because in failing to raise an objection at trial to the prosecutor's use of peremptory challenges, [Petitioner] forfeited his right to raise a *Batson* claim on appeal").

assistance of counsel "at critical stages of a criminal proceeding."[24]  Ineffective assistance of counsel claims are evaluated pursuant to the two-prong test established by the Supreme Court in *Strickland v. Washington*.[25]  Under *Strickland*, counsel is presumed to have acted reasonably and effectively unless a petitioner demonstrates that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the petitioner.[26]  To establish deficiency, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."[27]  To demonstrate prejudice, "the petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[28]  For example, "[a]n attorney cannot be ineffective for failing to raise a claim that lacks merit," because in such cases, the attorney's performance is not deficient, and would not have affected the outcome of the proceeding.[29]

Counsel was not ineffective for failing to raise the *Batson* issue at trial.  Courts have consistently held that failure to anticipate a change in the law does not constitute ineffective assistance.[30]  The Pennsylvania Supreme Court reasonably concluded that "[c]ounsel clearly cannot be faulted for failing to raise a *Batson* issue at trial because *Batson* did not yet exist."[31]  Thus, failure to raise such an objection at trial cannot serve as the basis of Petitioner's ineffectiveness claim.

---

[24] *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (citation omitted).

[25] 466 U.S. 668 (1984).

[26] *Id.* at 687.

[27] *Porter v. McCollum*, 558 U.S. 30, 38 (2009) (quoting *Strickland*, 466 U.S. at 688).

[28] *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (quoting *Strickland*, 466 U.S. at 694).

[29] *Singletary v. Blaine*, 89 F. App'x 790, 794 (3d Cir. 2004).

[30] *See Sistrunk v. Vaughn*, 96 F.3d 666, 670-71 (3d Cir. 1996) ("So far as we are aware, every court that has addressed the issue under similar circumstances has held that the failure to anticipate the result in *Batson* did not constitute ineffective assistance") (citing cases).

[31] *Sneed-2*, 899 A.2d at 1076.

Counsel also was not ineffective for failing to raise the *Batson* issue on direct appeal. As the Pennsylvania Supreme Court reasoned:

> Because counsel did not anticipate the *Batson* rule (and/or because counsel apparently saw no evidence of purposeful discrimination in jury selection), there was no record upon which to construct an appellate *Batson* claim. *Batson* contemplated a central role for the trial judge both in assessing whether a prima facie case was made out, and if so, in assessing the credibility of the neutral reasons for peremptory strikes proffered by the lawyer who exercised them. In this case, counsel had no such record or findings to rely upon. The fact-intensive nature of a *Batson* claim, thus, negates the notion that one could successfully argue such a claim for the first time on appeal, with no supporting record, and have any reasonable prospect of success.[32]

Counsel's decision not to raise a factually unsupported *Batson* claim on direct appeal does not amount to constitutionally deficient performance.[33] Thus, the state court's decision was not an unreasonable application of, nor was it contrary to, clearly established federal law. The ineffectiveness claim for failure to raise *Batson* at trial and on direct appeal will be denied.

### B. Petitioner's Ineffective Assistance of Counsel Claims Do Not Provide a Basis for Relief

Petitioner next argues that the Court should vacate his conviction because he did not receive effective assistance of counsel at trial. The Sixth Amendment guarantees the effective assistance of counsel "at critical stages of a criminal proceeding."[34] As noted, ineffective assistance of counsel claims are evaluated pursuant to the two-prong test established by the Supreme Court in *Strickland v. Washington*.[35] Under *Strickland*, counsel is presumed to have acted reasonably and effectively unless a petitioner demonstrates that (1) counsel's performance

---

[32] *Id.* at 1076-77 (citation omitted).

[33] *Lewis v. Horn*, 581 F.3d 92, 104 (3d Cir. 2009) ("Because we do not find [the petitioner's] *Batson* claim meritorious, we also reject his argument that his appellate counsel was ineffective for failing to make an adequate proffer in support of his *Batson* claim on direct appeal").

[34] *Lee v. United States*, 137 S. Ct. at 1964.

[35] 466 U.S. 668 (1984).

was deficient, and (2) the deficient performance prejudiced the petitioner.[36]  Petitioner argues that counsel was ineffective by: (1) failing to give an opening statement; (2) failing to effectively cross-examine the prosecution's key witnesses—Zeb Liverman, Charles Russell, and Robert Henderson; and (3) failing to call three witnesses that may have provided exculpatory information—David Paris, Natalie Dickerson, and Dewitt Poindexter.

### i.  Failure to Give an Opening Statement

Petitioner contends that he was deprived of his Sixth Amendment right to effective assistance of counsel because his trial counsel failed to give an opening statement, "which would have laid the foundation for an attack on the witnesses' credibility."[37]  At trial, counsel conferred with Petitioner and elected not to give an opening statement.  Rather than present evidence, counsel relied on the cross-examination of the prosecution's witnesses, and made a closing argument that heavily attacked these witnesses' credibility and thoroughly explained the defense's theory of the case, questioning the sufficiency of the evidence raised against Petitioner.

Counsel's strategic decision to forgo an opening statement and rely on this defense theory does not demonstrate that his performance was deficient.[38]  In addition, Petitioner cannot demonstrate how counsel's failure to give an opening statement prejudiced him at trial. Petitioner offers no credible basis for believing that the outcome of the trial would have been different had counsel given an opening statement, particularly where, as here, counsel did not

---

[36] *Id.* at 687.

[37] Am. Pet. at 21.

[38] *See Dwyer v. Shannon*, No. 07-4996, 2008 WL 4082293, at *5-6 (E.D. Pa. Aug. 22, 2008) (finding that counsel was not ineffective in failing to give an opening statement, since "there is no unfettered constitutional right to an opening statement," there is a presumption that counsel made a tactical decision to forego giving an opening statement, and there was evidence in the record showing that counsel's "cross-examination of witnesses during the Commonwealth's case-in-chief provided the jury with the requisite information that would have been delivered in the opening statement"); *see also Daniels v. Moore*, No. 02-4529, 2005 WL 2469676, at *5 (D.N.J. Oct. 6, 2005) (concluding that counsel's failure to give an opening statement was "plainly trial strategy" and did not amount to ineffective assistance").

present evidence and relied on his cross-examination of the prosecution's witnesses and closing argument to present the defense.

The Pennsylvania Supreme Court reasonably concluded that "decision[s] concerning such statements fall within the realm of trial strategy."[39] It also found that "counsel cannot be deemed ineffective *per se* for failing to give an opening statement" where Petitioner presents "no further argument or analysis in support of his bald assertion."[40] The state court's determination was not contrary to or an unreasonable application of federal law.[41] This claim provides no basis for relief.

### ii. Failure to Adequately Cross-Examine Three Prosecution Witnesses

Petitioner also contends that his trial counsel failed to adequately cross-examine three prosecution witnesses: Zeb Liverman, Charles Russell, and Robert Henderson.

*Zeb Liverman*

Petitioner claims that counsel failed to adequately cross-examine Zeb Liverman, one of the prosecution's witnesses who claimed to be present at the shooting gallery on October 13-14, 1980, about his drug use and prior convictions. The Pennsylvania Supreme Court, however, reasonably concluded that this claim has no merit, stating that:

> This assertion is belied by the record. Defense counsel aggressively cross-examined Liverman about his lengthy criminal history, including twenty prior arrests, six convictions, and several parole violations. N.T., 3/11/85, at 139-42. Defense counsel also elicited testimony regarding Liverman's activities as a drug dealer and his drug use on the night in question, including the large quantity of cocaine he consumed. *Id.* at 142-

---

[39] *Sneed-3*, 45 A.3d at 1106. Other circuits have also concluded that failure to give an opening statement is not *per se* ineffective.

[40] *Id.* (citing cases).

[41] *See Smith v. Adams*, 506 F. App'x 561, 565 (9th Cir. 2013) (holding that counsel's decision not to give an opening statement at murder trial involved a matter of trial tactics and did not constitute deficient performance); *see also Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004) ("An attorney's decision not to make an opening statement is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel.") (internal quotation marks omitted); *Clayton v. Gibson*, 199 F.3d 1162, 1178 (10th Cir. 1999) (concluding that failing to give an opening statement is not automatic proof of ineffective assistance).

50, 159.  Thus, there is no merit to the contention that defense counsel failed to inquire into Liverman's drug use or criminal history.[42]

The state court also noted that "defense counsel forcefully cross-examined Liverman, portraying him as a habitual criminal who was high on drugs at the time of the murder."[43]  This determination was not contrary to or an unreasonable application of federal law.  Consequently, this claim fails.

Petitioner also claims that counsel failed to cross-examine Liverman on his initial statement made to police.  Petitioner argues that counsel should have cross-examined Liverman with his initial statement that: "I could have been [at the garage at 17th and Kater] but I don't remember[;] I was doing heavy drugs at the time, I was doing Heroin, Cocaine, Meth, anything I could get my hands on[,] so I don't really remember."[44]  Petitioner omits that immediately after Liverman made this statement, he stated "[w]ait a minute let me tell you the truth about this dude," and then proceeded to describe the events surrounding the shooting, implicating Petitioner.[45]  As the Pennsylvania Supreme Court noted, "[i]f counsel had questioned Liverman about the initial comment, the Commonwealth could have rehabilitated him with the remainder of the statement" discussing the "truth" about what Liverman remembered of the Hawkins shooting.[46]  The state court reasonably concluded that counsel was not ineffective in failing to cross-examine Liverman on this initial comment.  Instead, counsel made a reasonable strategic

---

[42] *Sneed-3*, 45 A.3d at 1107.

[43] *Id.* at 1108.

[44] Trial Ex. C-8.

[45] *Id.*  In this initial statement, Liverman also told the police about the murder of Anthony D'Amore, which Petitioner was convicted of committing prior to this trial.  Although the statements about the D'Amore murder would not have been admitted if counsel attempted to cross-examine Liverman with this statement, the remainder of his statement recalling "the truth" about the shooting of Hawkins may have been recounted to the jury, and would not have elicited helpful testimony for the defense.

[46] *Sneed-3*, 45 A.3d at 1108.

decision "designed to effectuate [Petitioner's] interests."[47]   The state court's determination was not contrary to or an unreasonable application of federal law, as counsel's failure to use this statement did not fall "below an objective standard of reasonableness"[48] and did not prejudice Petitioner.[49]  This claim lacks merit.

*Charles Russell*

Petitioner asserts that counsel failed to adequately cross-examine Charles Russell with his initial statement made to police just a few hours after the murder in which he denied any knowledge of the events.  Russell ran the shooting gallery at 17th and Kater Streets and was picked up by police shortly after the shooting in the early morning hours of October 14, 1980.

Contrary to Petitioner's assertion that counsel failed to cross-examine Russell about his initial statement, the Pennsylvania Supreme Court explained that:

> Once again, a review of the record belies this claim.  Indeed, defense counsel thoroughly queried Russell about his initial statement, his motives for denying knowledge of the crime, subsequent false statements he made to the police, and his eventual accurate recitation of the events surrounding the murder.[50]

Counsel not only cross-examined Russell about his initial statement to police, but also extensively questioned Russell about his repeated lies to the police.[51]  The state court reasonably concluded that counsel's purported failure to cross-examine Russell was not supported by the record, and does not show that counsel was ineffective.  This determination was not contrary to

---

[47] *Id.*

[48] *Porter v. McCollum*, 558 U.S. 30, 38 (2009) (quoting *Strickland*, 466 U.S. at 688).

[49] In fact, when Liverman was asked about giving a statement to police on re-direct examination, counsel repeatedly objected, presumably to prevent the contents of the statement from being revealed to the jury.  The statement was instead used only for the purpose of showing that Liverman had provided it prior to making a deal with the prosecution to testify in the case against Petitioner.  N.T. 3/11/85, 182-85.

[50] *Sneed-3*, 45 A.3d at 1108.

[51] N.T. 3/11/85, 86-91.  Petitioner also ignores that fact that Russell explained on direct examination that he had initially lied to police because he was scared and did not want to get involved.  N.T. 3/11/85, 73-74.

or an unreasonable application of *Strickland*.  Accordingly, the claim that counsel failed to adequately cross-examine Russell with his initial statement fails.

Petitioner also contends that counsel was ineffective for "failing to cross-examine Russell on his substantial cooperation with police over the years."[52]  Again, an examination of the record demonstrates that counsel cross-examined Russell, eliciting testimony that he had spoken to police about different cases and that he eventually told the police the truth about this case in an effort to get the police to stop hassling him.[53]  Counsel repeatedly questioned Russell on this point, suggesting that Russell made a deal with police that they would stop picking him up if he implicated Petitioner in this case.  Since counsel did in fact cross-examine Russell on this point, and Petitioner has failed to show how counsel's cross-examination "fell below an objective standard of reasonableness,"[54] counsel's performance was not deficient during his cross-examination of Russell.  This claim does not provide a basis for relief.

*Robert Henderson*

Petitioner claims that counsel failed to adequately impeach Robert Henderson about his criminal background and history.  Petitioner also alleges that counsel failed to effectively cross-examine Henderson on the point that, aside from Liverman, Henderson "was the only witness who could place [Petitioner] at the garage that night."[55]

The Pennsylvania Supreme Court explained, however, that these contentions were without merit.  It wrote:

> Also baseless are Appellant's allegations of ineffectiveness founded upon the cross-examination of Robert Henderson ("Henderson").  Appellant does not explicate the

---

[52] Am. Pet. at 29.

[53] N.T. 3/11/85, 91, 94-95, 98-100, 104-05.

[54] *Porter*, 558 U.S. at 38 (quoting *Strickland*, 466 U.S. at 688).

[55] Am. Pet. at 30 (emphasis omitted).  Despite this assertion, Charles Russell also testified that Petitioner was in the garage on the night of October 13-14, 1980.  *See* N.T. 3/11/85, 66-67.

precise grounds for his claim of ineffectiveness other than to state that counsel failed to "adequately" impeach Henderson regarding his criminal background. Appellant intimates that this failure was particularly egregious since Henderson was the "only" witness who could place Appellant near the crime scene. We find these contentions to be completely devoid of merit. Defense counsel's first question to Henderson concerned his arrest record, which elicited testimony that Henderson had been arrested "at least fifteen times" for numerous robberies and burglaries. N.T., 3/12/85, at 36. Counsel's cross-examination also exposed Henderson's drug use, his failure to report the murder, and numerous inconsistencies in his testimony. *Id.* at 37-90. Consequently, Appellant has failed to demonstrate that counsel did not "adequately" cross-examine Henderson.[56]

The Pennsylvania Supreme Court's determination that counsel was not ineffective in his cross-examination of Henderson was not contrary to or an unreasonable application of *Strickland*. Counsel made strategic decisions in how to cross-examine Henderson about his criminal history, drug use, and inconsistencies in his testimony. This performance was not deficient. Moreover, Petitioner was not prejudiced by counsel's cross-examination of Henderson, as he has not shown that the outcome of the proceeding would have been different if counsel had approached cross-examination differently. Consequently, the ineffectiveness claims on counsel's cross-examination of Henderson are without merit and do not provide a basis for relief.

### iii. Failure to Call Three Potential Defense Witnesses

Petitioner asserts that trial counsel was ineffective for failing to call three potential defense witnesses—David Paris, Natalie Dickerson, and Dewitt Poindexter—who, according to Petitioner, would have testified that he was not present at the shooting gallery on the night in question.

In accordance with *Strickland*, while "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary,"[57] his or her decision on whether to call a witness is an inherently strategic one.

---

[56] *Sneed-3*, 45 A.3d at 1108.

[57] *Moore v. DiGuglielmo*, 489 F. App'x 618, 625 (3d Cir. 2012) (quoting *Strickland,* 466 U.S. at 691) (internal quotation marks and brackets omitted).

Counsel, therefore, is "not bound by an inflexible constitutional command to interview every possible witness."[58]  Rather, he is "simply required to exercise reasonable professional judgment in deciding whether to interview" the witness.[59]

The Pennsylvania Supreme Court concluded that counsel made a reasonable investigation into the statements Paris, Dickerson, and Poindexter gave to police, and made a strategic decision, after consulting with Petitioner, not to call these witnesses at trial.  The state court explained that "[w]hen raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies . . . . *Strickland* . . . by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial."[60]  To demonstrate *Strickland* prejudice, the petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case."[61]  It found that:

> Appellant has not—and cannot—show that the testimony of these witnesses would have been helpful to the defense.  The statements on which Appellant relies are not exculpatory; rather, they demonstrate only that the witnesses in question possessed no knowledge about the shooting.  Indeed, the prosecutor stated before the court:
>
>> [T]here are copies of statements by other people that were inside the garage at 17th and Kater on the night that the event[s] surrounding the shooting began.  Specifically, there are statements attributable to [David Paris, Natalie Dickerson, and Dewitt Poindexter].  All of them gave information saying that they didn't

---

[58] *Id.* at 625 (quoting *Lewis v. Mazurkiewicz,* 915 F.2d 106, 113 (3d Cir. 1990)) (internal quotation marks omitted).

[59] *Id.*

[60] *Sneed-3*, 45 A.3d at 1108-09 (citing *Commonwealth v. Johnson*, 966 A.2d 523, 526 (Pa. 2009); *Commonwealth v. Clark*, 961 A.2d 80, 90 (Pa. 2008)).  The Third Circuit has explained that the "Pennsylvania test is not contrary to *Strickland.* The five requirements set forth by the Pennsylvania Supreme Court would necessarily need to be shown to prevail under *Strickland* on a claim of this nature."  *Moore v. DiGuglielmo*, 489 F. App'x 618, 625 (3d Cir. 2012).

[61] *Sneed-3*, 45 A.3d at 1109 (quoting *Commonwealth v. Gibson*, 951 A.2d 1110, 1134 (Pa. 2008)) (internal quotation marks omitted).

> know anything. However, if [defense counsel] needs any of them to be present during his trial or during his part of the case . . . I will of course make them available.

> N.T., 3/13/85, at 9-10 (emphasis added). Defense counsel responded, "I have reviewed those copies of the statements . . . and as part of our defense, we agreed that they would not be necessary to be introduced." *Id.* at 11. Counsel clarified that "we" referred to "me and my client." *Id.*

> Since the statements do not exculpate Appellant, he has failed to show that the testimony of the uncalled witnesses would have been "beneficial under the circumstances of the case." *Gibson*, 951 A.2d at 1134. Thus, Appellant has not demonstrated prejudice. As such, counsel cannot be deemed ineffective, and the PCRA court did not err in denying this claim without a hearing.[62]

The Pennsylvania Supreme Court's decision was not contrary to or an unreasonable application of *Strickland*. The state court concluded that Petitioner could not show that counsel's failure to call these witnesses constituted deficient performance because the record demonstrates that counsel made a reasonable investigation into the statements these witnesses provided to police, conferred with Petitioner, and made a strategic decision not to call these witnesses because they stated that they did not know anything about the shooting.

Additionally, Petitioner cannot demonstrate that he was prejudiced by counsel's failure to call these witnesses. To demonstrate prejudice, Petitioner "must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[63] Although the witnesses' statements made to police suggest that Petitioner was not at the garage, the statements also suggest that the witnesses did not know anything about the shooting. Furthermore, the record indicates that at least one of these potential witnesses, Dickerson, failed a polygraph test shortly after giving the statement to police, which would have cast doubt on her credibility had she testified at trial. The statements alone, therefore, do not

---

[62] *Sneed-3*, 45 A.3d at 1109.

[63] *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (quoting *Strickland*, 466 U.S. at 694).

exculpate Petitioner.  Rather, these statements demonstrate that these witnesses lacked useful information about the shooting.  Since Petitioner also cannot demonstrate prejudice, this claim fails.

     **C. Petitioner's Claim that the Prosecutor Engaged in Misconduct During Closing Arguments and that Counsel Was Ineffective in Failing to Object to the Prosecutor's Remarks, Request Curative Instructions, Request a Mistrial, or Litigate these Issues on Appeal Provides No Basis for Relief**

Third, Petitioner argues that his conviction should be vacated because the prosecutor engaged in misconduct during closing arguments and in the examination of a witness in violation of his due process rights under the Fourteenth Amendment.  Prosecutorial comments made at trial amount to a constitutional violation if the Petitioner demonstrates that the comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[64] The touchstone of this analysis is the fairness of the trial, not the culpability of the prosecutor.[65] In evaluating whether alleged misconduct rose to the level of a constitutional violation, courts examine the prosecutor's conduct in the context of the trial as a whole,[66] and "assess[] the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."[67]  It is important to keep in mind that although an individual remark may not create a due process violation, the cumulative effect of several such remarks may.[68]

Here, the Pennsylvania Supreme Court held that all six claims of prosecutorial misconduct raised by Petitioner were meritless because the prosecutor's remarks did not "prejudice the jurors, forming in their minds fixed bias and hostility toward the defendant so that

---

[64] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[65] *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

[66] *Greer v. Miller*, 483 U.S. 756, 766 (1987).

[67] *Reid v. Beard*, 420 F. App'x 156, 159 (3d Cir. 2011) (quoting *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001)).

[68] *See Marshall v. Hendricks*, 307 F.3d 36, 63-64 (3d Cir. 2002).

they could not weigh the evidence objectively and render a true verdict."[69]  The state standard

applied by the state court, the "unavoidable prejudice test," is "consistent with and materially

indistinguishable from" the federal standard articulated by the Supreme Court in *Donnelly,*

*Darden*, and their progeny.[70]  As discussed more fully below, the state court's decision was not

contrary to or an unreasonable application of clearly established federal law.

### i. Petitioner's Claim that the Prosecutor Improperly Suggested that the Jurors Were "Employees" of the Commonwealth

Petitioner first claims that the prosecutor improperly suggested to the jurors that they

were "employees" of the Commonwealth by stating:

> Ladies and Gentlemen, it is common practice for criminal lawyers on both sides, when they first stand up to address the jury at the end of the case to thank you for your participation in the trial.  I am not a subscriber to that particular practice because I firmly believe, as I told you when I opened a few days ago, that *jury service is a job and it is a job that you haven't yet completed.  I am quite sure that none of your employers pat you on the back until you finish the job, and I don't want to do that either.*  I will reserve my thanks until you have done what you have to do in this case, based upon the evidence, and that is to find Willie Sneed guilty, and I will be glad to thank each and every one of you, but I am going to hold my thanks for the time being. [71]

> So now, ladies and gentlemen, it is time for you to do your duty.  Now is the time for you to do the hard part of your job.  Now is the time for you to go out and deliberate and return a verdict of guilty in this case[.][72]

Petitioner argues that these comments "clearly suggested to jurors that they were employees of

the Commonwealth rather than impartial finders of fact" and that the prosecutor, "as the jurors'

---

[69] *Sneed-3*, 45 A.3d at 1110.

[70] *Reid v. Beard*, 420 F. App'x at 160 (citing *Gee v. Kerestes*, 722 F. Supp. 2d  617, 624 (E.D. Pa. 2010); *see also Correder v. Coleman,* , No. 09-1817, 2010 WL 391413, at *8, n.7 (E.D. Pa. Jan. 26, 2010) (internal quotation marks and citations omitted) ("The state and federal tests for prosecutorial misconduct claims are substantively identical . . . . Both focus on the fundamental fairness of the trial based on potential prejudice from the alleged prosecutorial misconduct") (internal citations and quotations omitted); *Young v. Klem,* No. 04-0843, 2006 WL 487139, at *2 (E.D. Pa. Feb. 28, 2006) (finding the state standard for prosecutorial misconduct to be consistent with Supreme Court law).

[71] N.T. 3/13/85, at 34 (emphasis added).

[72] *Id.* at 66.

'boss' would not thank them, as 'employees', until they had done what he asked," that is, find Petitioner guilty of the offenses charged.[73]

The Pennsylvania Supreme Court found this claim meritless. It explained that defense counsel began his closing argument by saying "[f]irst of all, I would like to thank you for your attention the past couple of days and last week."[74] With this context, the state court observed "it is apparent that the prosecutor was responding to defense counsel's argument by reminding the jurors that their job or 'duty' was not yet complete; that they still had to reach a verdict,"[75] and that, unlike defense counsel, he would not thank them until they had done so.[76] Additionally, the state court examined the prosecutor's entire closing argument and found that he never indicated he was the jurors' "boss," or that it was their "job" to find Petitioner guilty.[77] Later in his closing argument, the prosecutor stated "You [the jury] draw whatever inferences you see appropriate, Ladies and Gentlemen, that's your job."[78] Therefore, the Pennsylvania Supreme Court reasonably concluded that when his comments are examined within the context of the full closing argument, the comments did not impermissibly direct the jury to find Petitioner guilty, but instead "echoed the argument of defense counsel and reminded the jurors that they had yet to fulfill their obligations."[79] The state court's determination was not contrary to or an unreasonable application of Supreme Court precedent. This claim will be denied.

---

[73] Am. Pet. at 42.

[74] N.T. 3/13/85, at 12.

[75] *Sneed-3*, 45 A.3d at 1110.

[76] *See, e.g., United States v. Young,* 470 U.S. 1, 12-13 (1985) (holding that the prosecutor may make fair response to an argument made by defense counsel in closing).

[77] *Sneed-3*, 45 A.3d at 1110.

[78] N.T. 3/13/85, at 63.

[79] *Sneed-3*, 45 A.3d at 1110

### ii. Petitioner's Claim that the Prosecutor Misstated the Law on the Role of the Jury

Petitioner next claims that the prosecutor misstated the law on the role of the jury when he said in his closing argument:

> You may not care for the lifestyles that Henderson and Russell and Liverman lead; I don't either, but that doesn't make any difference as far as the guilt or innocence of Mr. Sneed is concerned. You are not here to judge the witnesses; you are here to judge the defendant, so let's keep that in mind.[80]

Petitioner alleges this statement was tantamount to telling the jurors that they had no obligation to assess the credibility of the witnesses, which conflicts with Pennsylvania's standard jury instructions explaining that a juror's role is to "judge the credibility and the weight of the testimony . . . including the credibility of the witnesses."[81] Petitioner claims this statement was particularly harmful because the testimony from these witnesses was the only evidence connecting him to the crime.

However, as the state court accurately determined, when viewed in the context of the entire closing argument, the comment was not out of bounds. Immediately prior to the challenged comment, the prosecutor said:

> You have to focus in this case upon what you did hear from the witnesses, the two main ones of which are Robert Henderson and Zeb Liverman. They are the key witnesses in this case. And the operative word here . . . is witnesses. They are not defendants . . . they are not on trial here. [Petitioner] is on trial here.[82]

As the state court noted, this context shows that the prosecutor was "suggesting that the jury should look beyond the character flaws of the Commonwealth's witnesses" when judging their credibility.[83] In other words, the jury should not base their judgments on any disapproval of the

---

[80] N.T. 3/13/85, at 40.

[81] Am. Pet. at 44 (quoting Pa. Standard Jury Instructions § 2.04).

[82] N.T. 3/13/85, at 40.

[83] *Sneed-3*, 45 A.3d at 1111.

witnesses' lifestyles.[84]  Other statements made during the closing argument demonstrate that the prosecutor acknowledged that the jury should judge the credibility of the witnesses.  For example, he stated "if you believe [the witness] . . . that is entirely up to you to decide," as well as, "you have to apply all of the factors that [defense counsel] suggested are critical and the ones that Judge Ivins will give you at the end of this case in order to determine whether these men were telling you the truth."[85]

Furthermore, the trial court correctly instructed the jurors that they had "the sole responsibility of deciding whether the testimony of each witness in the case is truthful and accurate and is to be believed or disbelieved in whole or in part."[86]  Jurors are presumed to have followed the trial court's instructions.[87]  Therefore, even if the prosecutor's statements were perceived improperly by the jury, the trial court's instructions were sufficient to cure this confusion and clarify the jurors' role.

The state court's determination was not contrary to or an objectively unreasonable application of Supreme Court precedent.  "Prosecutors are given great latitude, especially during closing arguments, to ask the jury to draw inferences based on the evidence presented at trial."[88] Considering the full context of the prosecutor's closing argument, the defense counsel's closing argument, and the instructions from the trial court, it was not objectively unreasonable for the

---

[84] *Id.*

[85] N.T. 3/13/85, at 43.

[86] N.T. 3/13/85, at 77-78.

[87] *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987) (holding that the jury will normally be presumed to follow the court's instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury would be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be devastating to the defendant).

[88] *Becker v. Tennis*, No. 08-5274, 2011 WL 2550380, at *8 (E.D. Pa. Apr. 26, 2011), *report and recommendation adopted*, No. 08- 05274, 2011 WL 2550544 (E.D. Pa. June 23, 2011).

state court to conclude that the prosecutor did not misstate the law on the role of the jury. This claim will be denied.

### iii. Petitioner's Claim that the Prosecutor Improperly Told the Jury that it Had a Duty to Convict

Petitioner next claims that the prosecutor improperly told the jury that they had a duty to convict, rather than to weigh the evidence impartially, in order to make South Philadelphia safer. To support his claim, Petitioner strings together two unrelated statements made by the prosecution:

> So now, Ladies and gentlemen, it is time to do your duty. Now is the time for you to do the hard part of your job. Now is the time for you to go out and deliberate and return a verdict of guilty in this case.[89]

Petitioner links this statement to a comment found over twenty pages earlier in the transcript:

> Murder is a street crime. Street crimes happen in the street and not usually in places like Chestnut Hill or Roxborough[*sic*] or the far Northeast, but in the section of South Philadelphia where you heard about in this case where it is not very safe for a person to raise a family anymore.[90]

Petitioner claims that through these remarks, the prosecutor suggested to the jury that they had a duty to find petitioner guilty to make Philadelphia safer. Petitioner, however, takes both remarks out of context. Consistent with clearly established federal law, the state court analyzed these remarks within the context of the full closing argument and concluded Petitioner's claim is a "*post hoc* argument, crafted by taking isolated statements out of context."[91] Further, the state court found that the arguments were not improper even when each is viewed in isolation.

---

[89] N.T. 3/13/85, at 66.

[90] N.T. 3/13/85, at 41.

[91] *Sneed-3*, 45 A.3d at 1111.

In regards to the "duty" comment, the Pennsylvania Supreme Court relied on *Commonwealth v. Kemp*,[92] which established that there is "no error in a prosecutor asking a jury to render a verdict favorable to his position,"[93] to conclude there was no error in making this statement as to make the comment a denial of due process. This conclusion was not contrary to, nor an unreasonable application of, clearly established federal law. The comments did not "infect[ ] the trial with unfairness."[94] On their face, the comments suggest that the jury had a duty to deliberate, which properly instructs the jurors to weigh the evidence. Additionally, the prosecutor explicitly instructed the jury to weigh the evidence at other points in his closing argument, and suggested that the jury had a duty to convict only if they believed the evidence showed Petitioner's guilt beyond a reasonable doubt.[95]

Regarding the comment about crime in South Philadelphia, the Pennsylvania Supreme Court concluded "[t]he prosecutor was merely attempting to convey to the jury that since the murder occurred in a high-crime area, it was not surprising that the witnesses had criminal histories."[96] This is demonstrated by the statement in context:

> Street crimes happen in the street and not usually in places like Chestnut Hill of Roxborough[*sic*] or the far Northeast, but in the section of South Philadelphia where you heard about in this case where it is not very safe to raise a family anymore. And if you accept as true the fact that crime is going to happen in this type of area, you have to also understand that the type of people like Charlie Russell and Robert Henderson and Zeb Liverman are going to be the witnesses that come in and testify.[97]

---

[92] 753 A.2d 1278, 1284 (Pa. 2000), *abrogated on other grounds by Commonwealth v. Freeman*, 827 A.2d 385 (Pa. 2003).

[93] *Sneed-3*, 45 A.3d at 1111 (quoting *Kemp*, 753 A.2d at 1284) (internal quotation marks omitted).

[94] *Darden*, 477 U.S. at 181 (citation omitted).

[95] N.T. 3/13/85, at 63 ("you draw whatever inferences you see appropriate, Ladies and Gentlemen, that is your job").

[96] *Sneed-3*, 45 A.3d at 1111.

[97] N.T. 3/13/85, at 41 (emphasis added).

The state court's analysis is consistent with federal law.[98]  In *Howard v. Horn*, this Court concluded that similar comments made by a prosecutor about protecting those who lived in a "decent neighborhood" did not so infect the trial with prejudice as to amount to prosecutorial misconduct.[99]  The state court had reasoned that the prosecutor's comments did not encourage the jury to decide the case on an illegitimate basis, and even if they did, the trial court instructed the jury to decide the case on the testimony and evidence in the record, eliminating any impropriety.[100]

Similarly here, the prosecutor's comments about crime in South Philadelphia did not so infect the trial with prejudice, as the comments were in part an "invited response"[101] to defense counsel's attacks on the credibility of the witnesses.[102]  Through the comments, the prosecutor was attempting to point out that because the crime took place in a high-crime area, the witnesses unsurprisingly had criminal backgrounds.  Moreover, the trial court directed the jury to decide the case on the evidence presented, which was adequate to cure any possible defects.[103]

Overall, both comments, either taken together or viewed separately, were not so improper as to undermine the fairness of the trial.[104]  In denying Petitioner's claim that the prosecutor told

---

[98] *See Darden*, 477 U.S. at 181; *see also Donnelly*, 416 U.S. at 643.

[99] *Howard v. Horn*, 56 F. Supp. 3d 709, 730 (E.D. Pa. 2014).

[100] *Id*.

[101] *See Walker v. Palakovich*, 280 F. App'x 212, 216 (3d Cir. 2008) (discussing the prosecutor's remark about the high crime rate in Philadelphia and holding that the remark was not improper and did not deprive the petitioner of a fair trial).

[102] During closing arguments the defense counsel stated:

"These people have all been arrested twenty times a piece.  They will put a gun to your head faster than [you] can blink your eye . . . .  They rob you, they rape you, they kill you.  These are the type of people that are coming in now and saying you've got to believe me."  N.T. 3/13/85, at 32.

[103] *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions").

[104] *Darden,* 477 U.S. at 181 (citation omitted).

the jury they had a "duty to convict," the state court's analysis was not objectively unreasonable and deserves deference. Thus, habeas relief will be denied on this claim.

### iv. Petitioner's Claim that the Prosecutor Improperly Commented on Petitioner's Silence and Shifted the Burden of Proof

Petitioner next claims that the prosecutor violated the Fifth Amendment right against self-incrimination when he said: "Mr. Sneed didn't say anything because he has an absolute and constitutional right not to open his mouth for the entire length of the trial, but he is still on trial because other people said he did it."[105] Petitioner claims that this "language was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify"[106] and was improper.

The Fifth Amendment privilege against self-incrimination prohibits the prosecutor from commenting on a defendant's failure to testify at trial.[107] The prosecutor's comments violate the Fifth Amendment when "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."[108] However, if "the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by [the] defendant or his counsel, . . . there is no violation of the privilege."[109] In making this determination, the prosecutor's remark must be viewed in its trial context.

---

[105] N.T. 3/13/85, at 49.

[106] Am. Pet. at 47.

[107] *Griffin v. California*, 380 U.S. 609, 614 (1965).

[108] *Bontempo v. Fenton*, 692 F.2d 954, 959 (3d Cir. 1982).

[109] *Beneshunas v. Klem*, 137 F. App'x 510, 515 (3d Cir. 2005) (quoting *United States v. Robinson*, 485 U.S. 25, 32 (1988)).

The Pennsylvania Supreme Court found this claim to be frivolous, holding that the prosecutor's statement was merely an accurate summary of the law.[110] It held that the comment did not encourage the jury to draw an inference of guilt from Petitioner's failure to testify.[111] This determination was not contrary to or an unreasonable application of clearly established federal law. Defense counsel, in his closing argument, had already pointed out to the jury that Petitioner exercised his Fifth Amendment right to remain silent. He said, "[t]he defendant is under no obligation to stand up and say, whatever . . . . He doesn't have to take the stand. He doesn't have to present any evidence. Our laws say we don't have to prove our innocence."[112] Since defense counsel first commented on Petitioner's Fifth Amendment right to remain silent, the prosecutor did not prejudice the jury by simply restating the law at a later point.[113]

Additionally, when viewed in context, the prosecutor was not improperly commenting on Petitioner's failure to testify, but instead was responding to defense counsel's insinuation that one or more of the Commonwealth's witnesses shot Hawkins and then framed Petitioner.[114] When viewed as a whole, it is clear that the prosecutor was responding to this insinuation, and was explaining to the jury that one of the Commonwealth's witnesses, Zeb Liverman, was given use immunity. The prosecutor stated:

> And as far as the use immunity is concerned, don't get too carried away with the term immunity. Some of you may be intimidated by that and think it is more than it is. It is not as [defense counsel] suggests a promise that Mr. Liverman will not be prosecuted for this crime. That is not what use immunity is. Use immunity means nothing that the witness says will be used against him. That is why it is called use immunity. Nothing that Mr. Liverman testifies to can be used against him for the purposes of prosecuting him in this

---

[110] *Sneed-3*, 45 A.3d at 1112.

[111] *Id.*

[112] N.T. 3/13/85, at 13.

[113] *See Beneshunas*, 137 F. App'x at 515.

[114] Specifically, defense counsel said: "And if it was one of them that did it, they are not going to admit to it, so they picked a perfect patsy." N.T. 3/13/85, at 28.

> particular case for this particular crime. That's all it means. It does not mean that
> evidence that has been developed independently of Mr. Liverman connecting him with
> this crime, that he wouldn't be over there next to [Petitioner] because he would.
>
> The best example you can have of that is the testimony that you heard in this case.
> [Petitioner] didn't say anything because he has an absolute and constitutional right to not
> open his mouth for the entire length of this trial, but he is still on trial because other
> people came in and said he did it. The same would be true in the case of Zeb Liverman.
> Although we can't use what he said, we certainly use what everybody else said about his
> involvement to try him, but there is nothing there, folks.[115]

Once placed in context, the prosecutor's remarks are not reasonably construed as an improper

comment on Petitioner's guilt by refusing to testify; therefore, the remark did not violate

Petitioner's Fifth Amendment rights.

Petitioner additionally claims that the prosecutor "shif[ed] to Petitioner the burden of

proving his innocence" when he said:

> [Defense Counsel] suggested to you that [the witnesses] had three years to get their acts
> together and that they are covering for somebody, although he doesn't give you the
> slightest hint who it is they are covering for.[116]

Petitioner claims this statement impermissibly shifted the burden of proof to Petitioner.

However, the Pennsylvania Supreme Court found no merit to this purported burden-shifting

claim because "[t]he prosecutor's remark was in response to the theory espoused by the defense:

that one of the Commonwealth's witnesses committed the murder since [Petitioner] was the

'perfect patsy.'"[117] Additionally, "questions about the absence of facts in the record need not be

taken as comment on [the petitioner's] failure to testify."[118]

When placed in context, the prosecutor's remark reads as follows:

> Wouldn't you be suspicious if everybody remembered something exactly the same way
> from beginning to end? Wouldn't you be a lot more suspicious if there were no

---

[115] N.T. 3/13/85, at 48-49 (emphasis added).

[116] N.T. 3/13/85, at 56.

[117] *Sneed-3*, 45 A.3d at 1112 (quoting N.T. 3/13/85, at 28).

[118] *Bontempo*, 692 F.2d at 959.

discrepancies, that a conspiracy in fact had taken place here and all of these guys had gotten together and let the testimony fit perfectly. Of course you would. The fact that it doesn't fit together perfectly shows that each of those guys were trying to tell you what he could remember from his own recollection as opposed to getting together and cooking up a story.

And I will tell you something else, Ladies and gentlemen. If these guys were involved in cooking up a story to get Willie Sneed and save their own hides, they really did a pretty poor job. [Defense counsel] suggested to you that they had three years to get their acts together and that they are covering for somebody, although he doesn't give you the slightest hint who it is they are covering for. But if they had three years to get their act together, don't you think the testimony would have been better . . . . [119]

The Pennsylvania Supreme Court correctly noted that the prosecutor was merely responding to defense counsel's theory, not attempting to shift the burden of proof.[120] That decision is consistent with clearly established federal law, as "[t]here is nothing improper about a prosecutor attempt[ing] to focus the jury's attention on holes in the defense's theory . . . [and] such a comment does not implicate any . . . burden-shifting concerns."[121] The state court also explained that, even if this statement was improper, the trial court cured any error in its charge to the jury:

Now I have told you before that it is entirely up to the defendant in every criminal trial, and that includes this one, whether or not to testify. The defendant has an absolute right, founded on the constitution, to remain silent. Since that occurred in this case, I now tell you unequivocally, that you must not, you may not draw any inferences adverse to the defendant from the fact that he did not testify nor did he present testimony on his own behalf. [122]

As noted above, a jury is presumed to follow the court's instructions.[123] Any harm resulting from possible improper references to Petitioner's failure to testify or shifting the burden of proof to Petitioner was cured by this instruction. For these reasons, Petitioner's claim based on the

---

[119] N.T. 3/13/85, at 56-57 (emphasis added).

[120] *Sneed-3,* 45 A.3d at 1112.

[121] *United States v. Lore,* 430 F.3d 190, 213 (3d Cir. 2005); *see also Labrake v. Stowitzky,* No. 07-0212, 2009 WL 2924808, at *7 (E.D. Pa. Jan. 30, 2009) (finding that the prosecutor "was entitled to highlight [the petitioner's] lack of injury from the supposed struggle" and that this comment did not improperly shift the burden to petitioner or implicate his right to remain silent).

[122] N.T. 3/13/18, at 79.

[123] *See Weeks,* 528 U.S. at 234.

prosecutor's alleged improper references to Petitioner's failure to testify and improper burden-shifting will be denied.

### v. Petitioner's Claim that the Prosecutor Made Inflammatory or Vindictive Remarks

Petitioner challenges the following remarks from the prosecutor's closing argument, claiming that they were "inflammatory," "vindictive," and designed to "destroy" the impartiality of the jurors:[124]

> But maybe, maybe we ought to give [Petitioner] a break. Maybe we ought to show him a little mercy and maybe we ought to give him a second chance. But when you get to that point, ladies and gentlemen, you recall the testimony in this case because that is what is important here, and you give him the same break he gave to [the victim] when he lured him, lured him back to south Philadelphia to the garage where he knew his gun was so that he could shoot him and kill him.
>
> You show him the same mercy he showed Calvin Hawkins when he chased him down the street shooting at him, hitting him in the lung and severing a major artery, and hitting him in both arms. You give him the same second chance he gave to [the victim] who, lying on the street already suffering from a mortal wound, looked up at [Petitioner] . . . only to receive . . . a bullet to the brain.
>
> He is not entitled to anymore chances, ladies and gentlemen. He is entitled to a fair trial by the jury of his peers. That is the thirteen of you. And that is a lot more than [the victim] got. [The victim] died because he had the audacity to steal $50.00 from [Petitioner]. I have tried a lot of theft cases in my career, . . . but never saw one yet where the death penalty was appropriate.
>
> You people are here to judge [Petitioner]. [Petitioner] did the judging on [the victim] himself. He tried him and he convicted him and he executed him.[125]

The Pennsylvania Supreme Court examined the record to determine if these remarks deprived Petitioner of a fair trial. It concluded, however, that the remarks were based "solely on the evidence."[126] As Respondents note, "[t]his argument, telling the jury not to be swayed by misguided sympathy in reaching a verdict, but rather to judge the case solely on what the

---

[124] Am. Pet. at 47, 50.

[125] N.T. 3/13/85, at 66-68.

[126] *Sneed-3*, 45 A.3d at 1113.

evidence showed, was perfectly permissible."[127]  The Pennsylvania Supreme Court also noted

that a prosecutor is "free to present his or her arguments with logical force and vigor" and some

"oratorical flair" woven into a fact-based description does not give rise to a finding of

misconduct.[128]  The Pennsylvania Supreme Court's analysis is consistent with established federal

law,[129] and the state court did not unreasonably apply federal law.[130]  Relief is not warranted on

this claim.

### vi. Petitioner's Claim that the Prosecutor Improperly Bolstered the Credibility of a Commonwealth Witness

Petitioner claims that the prosecutor engaged in unconstitutional vouching for one of the

government's witnesses, Charles Russell.  "'Vouching' constitutes an assurance by [a]

prosecuting attorney of credibility of [a] government witness through personal knowledge, or by

other information outside of the testimony before the jury."[131]  While a prosecutor may not

"vouch" for a witness, he or she "may argue in the negative that the assertions made by defense

counsel that a witness is lying are not supported by the testimony in the record."[132]  In

determining whether the prosecutor improperly vouched for a witness's credibility, the allegedly

improper statement must be considered in context of the whole record.[133]

---

[127] Response to Am. Pet. at 83.

[128] *Sneed-3*, 45 A.3d at 1113 (citation omitted).

[129] *See Corredor v. Coleman,* No. 09-1817, 2010 WL 391413, at *8 n.7 (E.D. Pa. Jan. 26, 2010) ("The state and federal tests for prosecutorial misconduct claims are "substantively identical") (citations omitted).

[130] *See Darden*, 477 U.S. at 181; *see also Henry v. Horn,* 218 F. Supp. 2d 671, 704-05 (E.D. Pa. 2002) (holding that the standard employed by the Pennsylvania Supreme Court to assess the petitioner's claim of improper prosecutorial remarks was not contrary to the standard laid out in *Darden*, and that the state court did not unreasonably apply *Darden* in finding that the petitioner's claim regarding the prosecutor's improper remarks did not entitle him to habeas relief).

[131] *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998).

[132] *United States v. Brennan*, 326 F.3d 176, 186 (3d Cir. 2003).

[133] *Id.* (citing *Young*, 470 U.S. at 11-12).

During the murder investigation, Charles Russell gave the police two statements. He gave the first statement on October 14, 1980, shortly after the murder took place, and claimed that he did not know anything about the crime. However, he subsequently failed a polygraph test. He gave his second statement nearly four years later on February 7, 1984, instead stating that on the day of the murder, he saw Petitioner return to the garage, take his coat, and bolt outside. Russell passed a second polygraph test after giving his second statement. Petitioner contends that the prosecutor improperly bolstered Russell's credibility when the following exchange took place during re-direct examination:

> Q: Is this the statement that you are talking about that you gave last year in which you told them the truth?
>
> A: Yes.
>
> Q: You didn't flunk a polygraph test after you gave them that statement, did you?
>
> A: No.
>
> Trial Counsel: I object.
>
> The Court: I am going to overrule it, but please, sir, you are getting out of the purposes of this examination. I don't want that again, sir.[134]

Petitioner alleges that this line of questioning was improper in light of the prosecutor's suggestion that "Russell's statement must be true because he passed a polygraph."[135] At trial, the defense objected to this line of questioning.

The Pennsylvania Supreme Court examined the full trial record and noted that, on cross-examination, defense counsel questioned Russell about his first statement to police and his first, failed polygraph test. The exchange is as follows:

---

[134] N.T. 3/11/85, at 102-03.

[135] Am. Pet. at 49.

Q:     So you lied to the police, is that right?

A:     Yes, I did.

Q:     Now the police asked you, tell me what you know about the above incident and you said nothing?

A:     Right.

Q:     That was your answer, nothing. They asked you who was present inside the garage. Do you remember that?

A:     Yes, I remember because I had to take a polygraph test.[136]

The cross-examination continued as:

Q:     There is no mention here about Boobie (i.e. Liverman); there is no mention in here –

A:     That's why I failed the polygraph test.

Q:     Oh, that's why you failed the polygraph test?

A:     Yes.

Q:     In other words, you went out there and lied?

A:     Yes.[137]

These passages demonstrate that on re-direct, the prosecutor questioned Russell about the polygraph to correct the false impression created by defense counsel on cross-examination that Russell lied on both polygraph tests.  The prosecutor did not offer his own opinion based on facts not before the jury.  Rather, he asked if Russell passed the second test because the defense elicited testimony that made it seem as if Russell never passed a polygraph test.  Since defense counsel raised the issue of the polygraph testing on cross-examination, it was permissible for the

---

[136] N.T. 3/11/85, at 87.

[137] N.T. 3/11/85 at 89.

prosecutor to follow up on this topic.[138]  Thus, the state court's finding that Petitioner's claim is without merit because he "fails to acknowledge that the exchange occurred on re-direct after [Petitioner] himself broached the subject, [the polygraph], on cross-examination,"[139] was not an unreasonable application of federal law.

Additionally, the trial court's jury instructions emphasized that the arguments of counsel were not evidence, that the jurors were the sole judges of the facts, and that it was up to them to resolve any issues of credibility.[140]  The jury is presumed to follow the trial court's instructions.[141]  Therefore, the state court's analysis was neither contrary to, nor an unreasonable application of, clearly established federal law.  This claim will be denied.

### vii.  Petitioner's Claim that the Cumulative Effect of the Allegedly Improper Remarks Denied Him a Fair Trial

Petitioner argues that the above comments had a cumulative effect on the trial that violated his right to due process.  "The cumulative effect of prosecutorial misconduct . . . can rise to the level of a constitutional violation even if the individual instances of misconduct, standing alone, do not."[142]  Petitioner has not established that the cumulative effect of the prosecutor's statements "so infected the trial with unfairness as to make [his] conviction a denial of due process."[143]  To the extent any of the prosecutor's statements were improper, the prosecutor's own subsequent arguments to the jury and the trial court's jury instructions cured any potential

---

[138] Petitioner has not raised an ineffective assistance of counsel claim based on his trial counsel's decision to cross-examine Russell on his first, failed polygraph, and even if he had, such a claim would not entitle him to habeas relief, as Petitioner cannot show that he was prejudiced by his counsel's questioning Russell in this way.

[139] *Sneed-3*, 45 A.3d at 1112.

[140] N.T. 3/13/85 at 74-79, 103-104.

[141] *See Weeks,* 528 U.S. at 234.

[142] *Howard v. Horn*, 56 F. Supp. 3d 709, 730 (E.D. Pa. 2014) (internal quotation marks and citation omitted).

[143] *Darden*, 477 U.S. at 181 (internal quotation marks and citation omitted).

defects.[144]  Accordingly, the Court will deny habeas relief on this basis, as the cumulative effect of the prosecutor's comments did not deprive Petitioner of his right to a fair trial.

### viii. Petitioner's Claim of Ineffective Assistance of Counsel for Failure to Object to, Request a Curative Instruction, Request a Mistrial, or Litigate these Issues on Appeal Provides No Basis for Relief

As previously discussed, under the *Strickland* standard, counsel is presumed to have acted reasonably and effectively unless a petitioner demonstrates (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the petitioner.[145]  Petitioner argues that his trial counsel was ineffective for failing to object to the prosecutor's remarks, failing to request curative instructions, failing to request a mistrial, and failing to raise these issues on appeal.  The Pennsylvania Supreme Court carefully reviewed these claims under the *Strickland* standard and concluded that they were meritless.[146]

The state court's analysis was not contrary to or an unreasonable application of clearly established federal law.  Petitioner fails to satisfy both prongs of *Strickland*.  As discussed above, the underlying claims of prosecutorial misconduct during closing argument and re-direct examination are without merit, and counsel is not ineffective in failing to raise meritless claims.[147]  Moreover, Petitioner has not shown that he was prejudiced by counsel's failure to object to the prosecutor's comments, or request curative instructions or a mistrial, as he has not shown that the outcome of the proceeding would have been different had counsel done so.  Since

---

[144] *See Howard*, 56 F. Supp. 3d at 730 (finding no cumulative prosecutorial misconduct and holding that "[t]o the extent that any of prosecutor's statements were improper, the prosecutor's own subsequent statements or the trial court's instructions cured any potential prejudice").

[145] *Strickland*, 466 U.S. at 687.

[146] *Sneed-3*, 45 A.3d at 1113 ("since all of [Petitioner's] allegations of prosecutorial misconduct lack merit, counsel was not ineffective for failing to raise them").

[147] *See Parrish v. Fulcomer,* 150 F.3d 326, 328-29 (3d Cir. 1998) (counsel's failure to raise a claim is not unreasonable if the underlying claim is meritless).

the state court properly concluded that Petitioner's counsel was not ineffective on this basis, this

claim will be denied.

### D. Petitioner's Claim that His Conviction Must be Vacated Due to Improper Interference with the Jury Provides No Basis for Relief

Petitioner also seeks to vacate his conviction because of improper interference with the

jury.  A few weeks before Petitioner's trial for the shooting of Hawkins, Petitioner stood trial in

connection with another shooting and was convicted of second degree murder for the death of

Anthony D'Amore.  Mr. D'Amore's widow attended the trial in this case.  On the second day of

trial, outside the presence of the jury, defense counsel raised the issue of Mrs. D'Amore's

presence on the record.  The following exchange occurred:

> Defense counsel: I would like to raise a point for the record . . . . as the court is well aware, Mrs. D'Amore who was the victim's wife in the last Sneed case is present in the courtroom with either her husband or her paramour or something.

> The Court: I am puzzled about why she is here.  I assume she is not a witness.

> Prosecutor: She called me to see if she could come down to see what happens in the second case.

> Defense counsel: I am not particularly crazy about it, but I have no reason to say anything with regard to that.

> The Court: Wait a minute.  Is she doing anything with the jury other than sitting there?

> Defense counsel: I don't know.  When your honor gave the jury permission to go to the ladies room—

> The Court: They were accompanied by [a court officer].

> Defense counsel: That's correct, and I understand that M[r]s. D'Amore tried to go into the ladies room, and rightfully so, . . . the court officer told M[r]s. D'Amore you cannot go in there.  I assume [another court officer] took them into the men's room but [Mrs.] D'Amore's husband, or paramour or whatever, was walking in the hall—what I don't need is for somebody to do some talking out loud—and I'm only presupposing at this point—saying I would like to see this guy get what he deserves.

The Court: Please, sir, don't add anything you don't know. I see no reason for them to be here, but I have no way in the law to keep them away. The only thing I can do is keep them away from the jury.[148]

Two days later, prior to the start of closing arguments, defense counsel informed the court that one of the jurors, Alberta McCool, was approached by a woman in the bathroom.[149] The trial court held a colloquy with Ms. McCool, during which she informed the court that the woman asked her about "the wind and her hairdo."[150] Ms. McCool also stated that she did not respond to the woman, did not know who she was, and did not inform anyone but the court. Thereafter, the trial court informed Mrs. D'Amore and her partner that they were no longer permitted in the courtroom. Based on these events, Petitioner alleges that Mrs. D'Amore's actions "infected the trial proceedings," interfered with the jury, and deprived him of his right to a trial by a fair and impartial jury.[151]

"In all criminal prosecutions, the accused shall enjoy the right to a . . . public trial, by an impartial jury."[152] "The integrity of jury proceedings must not be jeopardized by unauthorized invasions."[153] "When a trial court is apprised of the fact that an extrinsic influence may have tainted the trial, the proper remedy is a hearing to determine the circumstances of the improper contact and the extent of the prejudice, if any, to the defendant."[154]

In this case, after learning of the contact Mrs. D'Amore made with Ms. McCool in the bathroom, the trial court spoke with Ms. McCool in the presence of trial counsel, and determined

---

[148] N.T., 3/11/85, at 61-62.

[149] It is not clear from the record how counsel or the trial court concluded that the woman in the bathroom was Mrs. D'Amore.

[150] N.T., 3/13/85, at 4.

[151] Am. Pet. at 62.

[152] U.S. Const. amend. VI.

[153] *Remmer v. United States*, 347 U.S. 227, 229 (1954).

[154] *Stouffer v. Trammell*, 738 F.3d 1205, 1214 (10th Cir. 2013).

that Ms. McCool did not know who Mrs. D'Amore was, did not respond to her innocuous comments about Ms. McCool's hair, and did not inform anyone of the interaction but the trial court. The trial court did not find that this interaction interfered with Ms. McCool's ability to remain on the jury. However, it also ordered that Mrs. D'Amore and her companion be prohibited from entering the courtroom for the remainder of the trial.

Based on this record, the Pennsylvania Supreme Court reasonably rejected Petitioner's claim of juror interference. It stated:

> While the contact was improper, [Petitioner] has failed to demonstrate that there was a reasonable likelihood that he suffered prejudice. Mrs. D'Amore's remarks bore no relation to the case and were innocuous. Moreover, her comments were "ambiguous and not of such a nature that it can be said without hesitation that the speaker intended to influence a decision adverse to [Petitioner]." *Commonwealth v. Laird*, 726 A.2d 346, 357 (Pa. 1999).

> Further, [Petitioner's] claim is entirely speculative. [Petitioner] made no proffer as to what trial counsel would say in response to this claim. Counsel was at the scene, he noticed the prospect of some supposed "improper contact," the issue was explored, and nothing was developed that supports a claim on appeal that [Petitioner] was somehow denied a fair trial because of innocuous remarks by a person who may have been related to another of [Petitioner's] murder victims and who had as much right as any member of the public to attend [Petitioner's] trial.

> Based on the record, we cannot conclude that Mrs. D'Amore's comments compromised the integrity of the jury. Consequently, this claim lacks arguable merit. Counsel will not be deemed ineffective for failing to raise a meritless claim.[155]

This determination by the Pennsylvania Supreme Court was not contrary to or an unreasonable application of clearly established federal law. Although Mrs. D'Amore's contact with the juror was improper, there was no evidence in the record supporting the conclusion that the contact tainted the juror's ability to render a fair and impartial verdict. Thus, this claim does not provide a basis for relief.[156]

---

[155] *Sneed-3*, 45 A.3d at 1115.

[156] Petitioner also cites to a colloquy that occurred during the penalty phase of his trial concerning allegations that Mrs. D'Amore and her companion were outside the courtroom and had a "full view of the jurors" as they exited and

### E. Petitioner's Claim that the Commonwealth Withheld Material and Exculpatory Evidence Provides No Basis for Relief

Fifth, Petitioner asserts that the Commonwealth withheld material and exculpatory evidence in violation of his due process rights. In *Brady v. Maryland*,[157] the Supreme Court held that a prosecutor has a duty to disclose evidence which is exculpatory and favorable to the accused on issues of guilt and punishment. To prove a *Brady* violation, the petitioner must show that the evidence was: (1) "favorable to the accused, either because it is exculpatory, or because it is impeaching," (2) "suppressed by the State, either willfully or inadvertently," and (3) "material such that prejudice resulted from its suppression."[158] Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.[159] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[160] In this case, Petitioner argues that "the Commonwealth withheld information concerning prior cooperation between Charles Russell and the Philadelphia Police, gave favorable treatment to witnesses, and also threatened witnesses for favorable testimony."[161] Petitioner also argues that his counsel was ineffective at trial and on direct appeal for failing to raise these *Brady* issues.

---

entered the courtroom. Am. Pet. at 61. Petitioner's citation to the penalty phase, however, does not provide a basis for a new trial at the guilt phase. Particularly where, as in Petitioner's case, he has already received penalty phase relief in the form of a life sentence.

[157] 373 U.S. 83 (1963).

[158] *Dennis v. Secretary, Pa. Dep't of Corrs.*, 834 F.3d 263, 284-85 (3d Cir. 2016) (internal quotation marks and citations omitted).

[159] *Id.* at 309.

[160] *United States v. Bagley*, 473 U.S. 667, 678 (1985).

[161] Am. Pet. at 63.

The Pennsylvania Supreme Court ruled that Petitioner's *Brady* claims were without merit because they were "conjecture" and Petitioner "failed to prove the existence of the allegedly exculpatory evidence."[162]  It wrote:

> The burden rests with [Petitioner] to "**prove, by reference to the record**, that evidence was withheld or suppressed by the prosecution." *Commonwealth v. Porter*, 728 A.2d 890, 898 (Pa. 1999) (citations omitted) (emphasis added).  [Petitioner] has failed to prove the existence of the allegedly exculpatory evidence, let alone that it was material and deprived him of a fair trial.  *See Paddy*, 15 A.3d at 450.  Likewise, [Petitioner] does not identify the "witnesses" who received this supposed favorable treatment.  [Petitioner's] bald assertions are insufficient to establish a viable Brady claim.
>
> [Petitioner] cannot circumvent his pleading requirement by requesting an evidentiary hearing to determine whether counsel was ineffective for failing to develop the purported exculpatory evidence.  "An evidentiary hearing . . . is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness." *Commonwealth v. Scott*, 52 A.2d 871, 877 n. 8 (Pa. 2000); *Commonwealth v. Edmiston*, 851 A.2d 883, 887 n. 3 (Pa. 2004).
>
> In light of  [Petitioner's] complete failure to meet his burden of proving the Brady claim and counsel's ineffectiveness, he is not entitled to relief.[163]

The Pennsylvania Supreme Court reasonably concluded that Petitioner's speculative references to allegedly withheld *Brady* material about purported cooperation between Charles Russell and the Philadelphia Police were insufficient to "prove, by reference to the record,"[164] that evidence was withheld or suppressed by the prosecution.  The state court's conclusion was consistent with Supreme Court precedent on *Brady*, is entitled to AEDPA deference, and does not provide a basis for relief.

Petitioner also argues that counsel was ineffective for failing to raise these purported *Brady* issues at trial or on direct appeal.[165]  However, this claim does not provide a basis for the

---

[162] *Sneed-3,* 45 A.3d at 1116.

[163] *Id.* (emphasis in original).

[164] *Commonwealth v. Porter*, 728 A.2d 890, 898 (Pa. 1999) (citations omitted).

[165] The Commonwealth contends that this ineffectiveness claim is procedurally defaulted because it was not raised before the state courts.  According to the Commonwealth, because Petitioner "raised only a *pro forma* claim that

relief Petitioner seeks. As previously noted, "[a]n attorney cannot be ineffective for failing to raise a claim that lacks merit,"[166] and in this case, counsel's failure to raise a meritless *Brady* claim without credible contentions of the existence of exculpatory evidence was not deficient, and would not have affected the outcome of the proceeding. This claim will be dismissed.

### F. Petitioner's Cumulative Error Claim Provides No Basis for Relief

Sixth, Petitioner urges the Court to vacate his conviction and sentence in light of the prejudicial effects of the cumulative errors in this case. The cumulative error doctrine allows a petitioner to raise a standalone claim asserting that the cumulative effect of errors at trial "so undermined the verdict as to constitute a denial of his constitutional right to due process."[167] "Individual errors that do not entitle [the] petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process."[168] Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that the petitioner "is not entitled to relief based on cumulative errors unless he can establish actual prejudice."[169] The petitioner must present his claim of cumulative error in the state courts before it may provide a basis for federal habeas relief.[170]

---

counsel was ineffective," this claim is procedurally defaulted. Comm. Br. at 93. However, the PCRA court expressly noted that Petitioner raised an ineffectiveness claim based upon the purported *Brady* issues. Comm. Ex. 5 at 10. With respect to the ineffectiveness of trial and direct appeal counsel for failure to raise these *Brady* issues, Petitioner's PRCA petition states "[t]o the extent that previous counsel could have uncovered this information and litigated this issue in the trial court and on direct appeal, counsel was ineffective." Comm. Ex. 14 at ¶ 178. It wrote: "Sneed also alleges that because trial counsel failed to uncover this information and litigate it at trial and on direct appeal, counsel was ineffective." Comm. Ex. 13 at 39. Petitioner also raised this ineffectiveness claim in his appeal of the PCRA court's decision. Pet.'s Reply at 5. Thus, this ineffectiveness claim is not procedurally defaulted.

[166] *Singletary v. Blaine*, 89 F. App'x 790, 794 (3d Cir. 2004).

[167] *Collins v. Secretary of Pa. Dep't of Corrs.*, 742 F.3d 528, 542 (3d Cir. 2014).

[168] *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) (internal quotation marks and citations omitted).

[169] *Id.*

[170] *Collins*, 742 F.3d at 543.

Here, the Pennsylvania Supreme Court reasonably rejected Petitioner's claim of cumulative error.[171]  Petitioner is unable to show that any of his present claims involved a violation of his constitutional rights.  Even if the Court were to combine all of these alleged errors that occurred at trial and on direct appeal, there is still weighty evidence of Petitioner's guilt in the record.[172]  Petitioner therefore has not shown that the cumulative prejudice resulting from the alleged errors undermined the reliability of the verdict.  Petitioner's claim of cumulative error lacks merit.

## IV.  PETITIONER IS NOT ENTITLED TO AN EVIDENTIARY HEARING

Federal courts are not permitted to provide habeas relief for claims that were previously adjudicated on the merits in state-court proceedings unless one of the exceptions in 28 U.S.C. § 2254(d) applies.  Furthermore, federal habeas courts are permitted to grant evidentiary hearings only if the requirements of § 2254(e)(2) are satisfied.  When a habeas claim is subject to § 2254(d) but does not satisfy either of the exceptions therein, it is "unnecessary to reach the question of whether § 2254(e)(2) would permit a federal hearing on that claim."[173]  In other words, "when the state-court record precludes habeas relief under the limitations of § 2254(d), a district court is not required to hold an evidentiary hearing."[174]

Most of the claims for which Petitioner requests an evidentiary hearing were adjudicated on the merits in state court.  The PCRA court rejected those claims without holding a hearing because they lacked merit on their face.  As discussed, this Court concluded that those claims

---

[171] *See Sneed-3*, 45 A.3d at 1117.

[172] *Fahy*, 516 F.3d at 205.

[173] *Cullen v. Pinholster*, 563 U.S. 170, 184 (2011) (quoting *Williams v. Taylor*, 529 U.S. 420, 444 (2000) (internal quotations marks omitted)).

[174] *Pinholster*, 563 U.S. at 183 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (internal quotation marks omitted)).

failed to satisfy either of § 2254(d)'s exceptions. Accordingly, an evidentiary hearing is not warranted.[175]

## V. CONCLUSION

In conclusion, the amended petition will be denied without an evidentiary hearing. Petitioner has not made a "substantial showing of the denial of a constitutional right,"[176] and a certificate of appealability should not issue. There is no basis to conclude that "reasonable jurists could debate whether . . . the [amended] petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[177] An appropriate order follows.

---

[175] *Pinholster*, 563 U.S. at 184.

[176] *See* 28 U.S.C. § 2253(c)(2).

[177] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and citation omitted).